UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NORTHBROOK PLIC, LLC, NORTHBROOK VNBP, LLC, and NORTHBROOK SUB, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> CVS PHARMACY, INC., <br><br> Defendant. | Case No. 10 C 873 <br><br> Judge Joan B. Gottschall |

**MEMORANDUM OPINION & ORDER**

On February 17, 2012, the court granted in part the Plaintiffs' (collectively, "Northbrook") motion for summary judgment against CVS Pharmacy, Inc. ("CVS"). Northbrook had sought summary judgment with regard to all issues of liability on their claims against CVS, indicating that once liability was determined, discovery could be taken regarding the nature and extent of damages. The court granted Northbrook's motion in part, concluding that CVS was not liable for damages after July 31, 2008, the date that Northbrook entered into a new lease with the third-party defendant. Northbrook asks the court to reconsider this limited portion of its ruling.

**I. Factual Background**

In 1994, Northbrook entered into a fifteen-year lease ("1994 lease") with Northbrook L.T., Inc. ("LT")[1] for the use of commercial space. The 1994 lease specified that a tenant default occurred when the tenant fails to pay rent and does not cure that default within 10 days after receipt of notice of the failure to pay rent from the landlord.

---
[1] Through a merger, LT later became LNT, Inc. ("LNT," aka Linens N Things).

(See Lease, ECF 76-2, ¶ 18.01(a)). The 1994 lease provided Northbrook with several remedies to cure a tenant's default, including termination of the lease. (See id.). In addition, the 1994 lease contained a "survival clause." (See id., ¶ 18.01(b)). The survival clause provided that upon expiration or termination of the lease pursuant to tenant's default, the landlord's repossession of the premises did not "relieve tenant of its liabilities and obligations hereunder, all of which shall survive such expiration, termination, or repossession . . . ." (See id.).

CVS served as the guarantor for LNT. The guaranty between Northbrook and CVS provided that CVS's guaranty terminates "at such time as all of tenant's obligations under the lease . . . have been satisfied and released." (See Guaranty, ECF No. 76-1, ¶ 6).

Several years into the lease, LNT assigned its tenancy to Garden Fresh Northbrook, Inc. ("Garden Fresh"). Under the assignment, Garden Fresh agreed to pay rent to LNT, though its payment covered only a portion of LNT's rent obligation to Northbrook. For approximately five years, LNT continued to pay rent directly to Northbrook, using the rent that Garden Fresh paid to it to offset its obligation to Northbrook. In May 2008, LNT filed for bankruptcy. Although Garden Fresh paid rent to LNT under the assignment in both May and June of 2008, LNT did not forward the rent paid by Garden Fresh to Northbrook or otherwise pay Northbrook any rent after it declared bankruptcy.

During the pendency of LNT's bankruptcy proceedings, Northbrook entered into a ten-year lease ("Garden Fresh lease") with Garden Fresh. A rider to the Garden Fresh lease between Northbrook and Garden Fresh expressed Northbrook's intent to terminate

the 1994 lease between Northbrook and LNT. (Rider to Lease, ECF No. 52-3, Ex. A, Tab 4, at GF 1704). It reads, in full:

> Termination of Prior Lease: Landlord and Tenant hereby acknowledge that Tenant occupies the Premises pursuant to that certain Lease dated September 21, 1994 (the "Prior Lease"). The Prior Lease was assigned from Linens N Things ("LNT") to Tenant. To the parties' knowledge, LNT declared bankruptcy, rejected the Prior Lease, and has no rights in or to the Prior Lease. Subject to the conditions set forth in this Section 2, Landlord and Tenant hereby terminate the Prior Lease effective as of the Commencement Date of this Lease, it being the intention of the parties hereto that this Lease supersede and replace the Prior Lease and no further documents or instructions shall be necessary to evidence such termination of the Prior Lease, but Tenant agrees to execute, acknowledge and deliver such other documents and instruments as may be reasonably necessary or desirable to confirm the foregoing. Landlord and Tenant each agree to release the other from all liability and claims under the Prior Lease, except that Tenant shall remain liable to Landlord for any third party claims in tort and any items of Base Rent, Additional rent and/or other amounts due and payable under the Prior Lease for periods through the termination thereof, including such amounts which are not yet ascertainable and/or billed.

Northbrook moved for summary judgment, arguing that LNT's failure to pay rent beginning in May 2008 constituted a default under the terms of the 1994 lease and triggered CVS's obligation under the guaranty. In the motion, Northbrook stated that they sought "Partial Summary Judgment on all of their allegations of liability as stated against defendant [CVS]." Northbrook anticipated CVS's argument that the rider to the Garden Fresh lease terminated LNT's obligations under the 1994 lease and argued that the survival clause preserved LNT's obligations after the 1994 lease had been terminated.

In the prior summary judgment ruling, the court determined that LNT defaulted on the 1994 lease in May and June 2008 when it declared bankruptcy and failed to pay rent to Northbrook. The court further rejected CVS's argument that Northbrook's failure to give notice excused LNT's default because CVS waived any such claim in the

3

guaranty.[2] The court concluded that the guaranty survived the termination of the lease and that CVS was liable for LNT's obligations under that lease. The court, however, interpreted the language of the rider to relieve LNT of any obligations it had under the 1994 lease between Northbrook and LNT. Consequently, the court held that CVS was not liable for damages after July 31, 2008, when Northbrook and Garden Fresh executed the Garden Fresh lease. Northbrook asks the court to revisit this position.

## II. Standard of Review

A motion to reconsider serves a limited purpose in federal civil litigation. A motion to reconsider is not a vehicle to rehash an argument the court has already rejected or to present legal arguments that were not presented earlier. *Schilke v. Wachovia Mortg., FSB*, 758 F. Supp. 2d 549, 554 (N.D. Ill. 2010). Rather, a motion to reconsider allows a party to bring the court's attention to manifest errors of fact or law, a significant change in the law or facts, a court's misunderstanding of a party's argument, or a court's decision on an issue that was not properly before it. *United States v. Ligas*, 549 F.3d 497, 501 (7th Cir. 2008); *Neal v. Newspaper Holdings, Inc.*, 349 F.3d 363, 368 (7th Cir. 2003).

## III. Analysis

In resolving the motion for partial summary judgment, it was necessary for the court to evaluate the impact of the Garden Fresh lease. The court, however, erred in

---

[2] In addition, the court observed that the notice requirement was conditional. Upon further review, that conclusion appears inaccurate. Section 18.01 sets forth Northbrook's rights upon the tenant's default. Section 18.01 does not make notice a pre-condition to recognizing the tenant's default. A default occurs when the tenant fails to pay rent. Rather, Section 18.01 requires the landlord to give the tenant notice of its intent to terminate the lease or repossess the property. In other words, Section 18.01 gives the tenant the opportunity to cure the default and maintain its rights under the lease, including possession of the property. Section 18.01 does not, however, excuse a default when the landlord fails to give notice of the default.

4

concluding that the termination clause in the rider to the Garden Fresh lease extinguished LNT's, and consequently CVS's, liability to Northbrook.

A tenant's rights and obligations under a lease are not coexistent. *Trattoria L'Angolo Di Roma, Inc. v. Winkler*, No. 94 C 2693, 1994 WL 444862, at * 4 (N.D. Ill. Aug. 15, 1994). A survival clause allows a landlord to prevent a tenant who surrenders possession of a property, which terminates the tenancy, to avoid a continuing obligation to pay rent. *Circuit City Stores, Inc. v. Rockville Pike Joint Venture, Ltd. P'ship*, 376 Md. 331, 353, 829 A.2d 976 (Md. 2003). Thus, a valid survival clause allows a landlord to terminate a lease or a tenant's right to possession without extinguishing the tenant's obligation to continue to pay rent. *Nat'l Jockey Club v. Ganassi*, 740 F. Supp. 2d 950, 961-62 (N.D. Ill. 2010); *Trattoria L'Angolo Di Roma, Inc.*, 1994 WL 444862, at *4. The court made a manifest error of law by ignoring this distinction and the survival clause itself and instead concluding that the Garden Fresh lease extinguished both LNT's obligations and its rights.

The court held that the termination clause in the rider to the Garden Fresh lease released LNT from future obligations under the lease. In the summary judgment order, the court concluded that Northbrook intended the termination clause to relieve LNT of its obligations under the 1994 lease simply because it stated that Northbrook and Garden Fresh intended the Garden Fresh lease to "supersede and replace" the 1994 lease. This conclusion mistakes the intent of the termination clause. It conflates the intent to terminate LNT's rights under the 1994 lease with the intent to relieve LNT of its obligations under the 1994 lease.

In construing a contract, a court should give effect to the intention of the parties, which is discerned from the plain and ordinary meaning of the language used in the contract. *Sklodowksi v. Countrywide Home Loans, Inc.*, 358 Ill. App. 3d 696, 700, 295 Ill. Dec. 38, 832 N.E.2d 189, 193 (Ill. App. Ct. 2005). In addition, a court must construe the words of a contract within the context of the contract as a whole. *William Blair & Co., LLC v. FI Liquidation Corp.*, 358 Ill. Ap. 3d 324, 335, 294 Ill. Dec. 348, 830 N.E.2d 760, 770 (Ill. App. Ct. 2005).

When the termination clause is read as a whole, the intent behind the termination clause is plainly to terminate LNT's rights to the leased property and not its obligations. The Garden Fresh lease is a contract between Northbrook and Garden Fresh, not a contract between Northbrook and LNT. Nothing in the language of the termination clause speaks to extinguishing LNT's obligations under the prior lease. Rather, the clause speaks only in regards to LNT's rights to the property under the prior lease.

The entirety of the termination clause makes its intent plain. The termination clause initially acknowledges that Garden Fresh currently occupies the property pursuant to an assignment of the 1994 lease between Northbrook and LNT. Immediately thereafter, the termination clause reasons that LNT "declared bankruptcy, rejected the Prior Lease, and [had] no rights in or to the Prior Lease." It then expresses the intent to terminate the prior lease between Northbrook and LNT. In other words, the termination clause clarifies that LNT, having rejected the 1994 lease, no longer has any rights to the property so that Garden Fresh's possession of the property cannot later be questioned. In concluding the termination clause extinguished LNT's obligations under the 1994 lease, the court stripped the phrase "supersede and replace" from the context of the clause and

ascribed to it an unintended meaning. Further, the court ignored entirely the impact of the survival clause contained in the 1994 lease, which is the contract between Northbrook and LNT.

The survival clause in the 1994 lease explicitly states that LNT's obligations survive the termination of the lease, noting in particular that the repossession of the property does not relieve LNT of its obligations. The court held that the undisputed material facts demonstrated that LNT had defaulted on its obligations under the 1994 lease by failing to pay rent to Northbrook in May and June 2008. LNT's default thus allowed Northbrook to terminate the lease, and all of LNT's rights thereunder, and demand that LNT and its guarantor, CVS, fulfill LNT's remaining obligations under the lease. CVS argues that the survival clause does not apply because Northbrook failed to provide LNT notice of its default. The court rejected that argument on summary judgment, observing that CVS waived the right to raise a defense based upon Northbrook's failure to notify LNT of its non-payment or other default. The court will not revisit that conclusion here.

The court made a manifest error in law in concluding that Northbrook's damages were limited to a period before July 31, 2008. Accordingly, the court GRANTS Northbrook's motion to reconsider and vacates that part of its February 17, 2012 opinion and order holding that Northbrook may not recover damages after July 31, 2008.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: June 5, 2012